UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ONUR BASER,

    Plaintiff,

v.                                                                     CASE NO. 13-CV-12591
                                                                   HON. DENISE PAGE HOOD

DEPARTMENT OF VETERANS
AFFAIRS,

    Defendant.
_____/

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**
**and**
**NOTICE SETTING SCHEDULING CONFERENCE**

**I.    BACKGROUND**

On June 13, 2013, Plaintiff Onur Baser filed the instant suit against Defendants Department of Veterans Affairs ("VA"), Secretary of Veterans Affairs ("Secretary") and Director of Freedom of Information Act Office for Veterans Health Administration ("Director of FOIA") alleging one count of a violation under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(6)(A). (Comp., ¶ 26) The Secretary and Director of FOIA were dismissed pursuant to a Stipulation and Order on December 12, 2013. (Doc. No. 18)

Plaintiff filed two FOIA requests with the VA's Veterans Health Administration ("VHA") on March 15, 2013 and March 20, 2013. (Comp., ¶ 7) The March 15, 2013 request sought an electronic copy of certain datasets of information from patient files during the time period from October 1, 2012 through March 1, 2013. (Comp., ¶ 9) The March 20, 2013 request sought an electronic copy of certain datasets of information from patient files during the period October 1, 2001 through September 30, 2005. (Comp., ¶ 10) Various communications were exchanged between Plaintiff's counsel and VA representatives, and, as of the filing date of the Complaint, Plaintiff had not received responses to his March 15 or March 20, 2013 FOIA requests. (Comp., ¶ 24)

The VA formally denied Plaintiff's FOIA requests on November 20, 2013, indicating that the FOIA requests were subsumed by the litigation. (Doc. No. 20, Ex. 13) The VHA, through its National Data Systems ("NDS"), began the highly-technical and time-intensive process of assembling and processing the data request, which the VA claims encompassed more than a billion rows of data. The VA so notified Plaintiff indicating that the requested data was time consuming to assemble. In addition, the NDS increasingly became concerned that the release of such information, without personal identifiers, would affect the individual's privacy concerns as to the medical records. Without a final decision from the VA, Plaintiff

filed the instant suit.

This matter is before the Court on Defendant's Motion for Summary Judgment. A response, reply, sur-reply, supplemental brief by the VA and Motion to Strike the supplemental brief were filed. The Court allowed the parties to file further supplemental briefs which have now been filed. A hearing was held on the matter on July 17, 2014.

## II. SUPPLEMENTAL BRIEFS

In its Supplemental Brief filed May 29, 2014, Defendant asserts that since the filing of its summary judgment motion, the parties have engaged in settlement discussions. During the discussions, the VA further analyzed Plaintiff's FOIA requests. It analyzed the level of risk of re-identification it could apply as part of its own Expert Determination, potentially allowing release of the information with appropriate redactions. Consistent with guidelines established by the Department of Health and Human Services ("HHS") under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the VA determined that application of a 1% risk of re-identification of veteran/patient identities at the dataset level and a 0.05% maximum risk of threshold at the patient level would allow release of certain information in response to Plaintiff's requests. The VA is now willing to produce some information subject to the redactions/withholdings of variables and other

3

specific information identified in the protocol attached to the supplemental brief. The protocol indicates which variables of each dataset the VA was willing to produce. (Doc. No. 30, Ex. A) The VA has now released the redacted responsive information to Plaintiff for the datasets requested in Plaintiff's first FOIA request for data between October 1, 2012 through March 1, 2013. (Doc. No. 30, Ex. B) The VA will now turn to Plaintiff's second FOIA request for the datasets between October 1, 2001 through September 30, 2005. The VA notes that the release of the information will not resolve the case.

In its Motion to Strike Supplemental Brief filed June 3, 2014, Plaintiff asserts that the brief and exhibits: are not supported by any admissible evidence; was produced without allowing Plaintiff's experts to respond; and was produced in violation of Rule 408 of the Rules of Civil Procedure in that the parties were in settlement negotiations.

On June 13, 2014, the VA filed a Second Supplemental Brief indicating that it could supply information to Plaintiff applying certain methodology to protect patient information under HIPAA. The VA continues to insist that the release of full datasets and information as Plaintiff requested would lead to a risk of re-identification of patients, which outweighs any public benefit Plaintiff's research may have.

On June 27, 2014, Plaintiff filed a response to the VA's supplemental brief.

Plaintiff claims that the VA's production was extremely limited and did not provide data useful to Plaintiff's medical researcher. Plaintiff claims the VA continues to ignore the public interest in production of the information and fails to refute the findings of Plaintiff's two experts who concluded that a more substantial amount of data can be produced with a minimum risk of disclosure. Plaintiff claims the production changes nothing about the parties' arguments and that summary judgment should be granted in Plaintiff's favor.

Plaintiff also now refers to the "political firestorm" that has erupted from the disclosure of waiting lists at the VA facilities and the deep concern about the operation of the VA. However, Plaintiff has not shown how this affects the information he requests from the VA and whether the "waiting list" issue is relevant to the data sought by Plaintiff. Plaintiff claims that the parties are still at the same point and with the same arguments as when the summary judgment briefings were initially filed.

Plaintiff's Motion to Strike Defendant's supplemental briefs is denied since Plaintiff filed a response to the supplemental briefs and had the opportunity to argue the issues at the hearing.

**III. ANALYSIS**

    **A.    Standard of Review**

5

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*,

477 U.S. at 248.

### B. FOIA Review

Under FOIA, 5 U.S.C. § 552(a)(3)(A), each "agency" upon "any request" for records shall make the records "promptly available to any person," unless one of nine specific exemptions applies under 5 U.S.C. § 552(b)(1)-(9). Because of FOIA's objective of disclosure, these exemptions are to be "narrowly construed." *ACLU of Michigan v. F.B.I.*, 734 F.3d 460, 465 (6th Cir. 2013)(citing *Akron Std. Div. of Eagle-Picher Indus, Inc. v. Donovan*, 780 F.2d 568, 571 (6th Cir. 1986)). The FOIA requires a reasonable search tailored to the nature of the request. *Rugiero v. United States Dep't of Justice,* 257 F.3d 534, 547 (6th Cir. 2001). The agency has the burden of justifying its withholding, which is reviewed by the district court *de novo*. *ACLU*, 734 F.3d at 465.

FOIA cases are generally decided on summary judgment, since the primary question is a legal one: whether the withheld documents are covered by one of the statutory exemptions. *Id.* (*citing Rimmer v. Holder,* 700 F.3d 246, 255 (6th Cir. 2012)). In FOIA cases, a plaintiff does not have access to the documents requested so a plaintiff can only challenge the agency's application of the legal standard to the description provided by the agency, not the actual content of the underlying documents. *Id.* (citing *Jones v. FBI,* 41 F.3d 238, 242 (6th Cir. 1994)). To prevail

7

on summary judgment, the agency must show that it made a "good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information" and that any withholding of materials was authorized by a statutory exception. *Rimmer*, 700 F.3d at 255. In support of its position, the agency must submit detailed affidavits and a descriptive index, known as the Vaughn Index, with "a relatively detailed analysis" of "manageable segments" of the documents. *ACLU*, 734 F.3d at 465 (citing *Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C. Cir. 1973)). A court must have access to sufficient data concerning any potentially exempt documents to determine whether the disclosure restrictions apply. *Osborn v. IRS,* 754 F.2d 195, 196 (6th Cir. 1986).

The Vaughn Index must include a summary of the requested documents and must meet the following criteria: 1) the index should be contained in one document, complete in itself; 2) the index must adequately describe the withheld document or deletion from a released document; 3) the index must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant, sufficiently specific to permit a reasoned judgment as to whether the material is exempt under FOIA, but need not be so detailed as to reveal that which the agency wishes to conceal. *Id.* The declarations submitted by the agency are entitled to a "presumption of good faith." *ACLU,* 734 F.3d at 465.

If the plaintiff is able to show bad faith or that the agency's declarations are insufficient to meet its burden, the court may examine the withheld documents *in camera*. *Id.* (citing 5 U.S.C. § 552(a)(4)(B)). If the agency adequately describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position. *Rugiero,* 257 F.3d at 544. The district court's primary role is to review the adequacy of the affidavits and other evidence. *Id.* The question focuses on the adequacy of the agency's search, not on whether additional documents exist that might satisfy the request. *Id.* at 547.

    **C.**    **Reviewing the VA's affidavits and exhibits**

        **1.**    **Exemption 6**

In its Motion for Summary Judgment, the VA asserts it has not provided the records requested by Plaintiff because they contain the private, confidential medical information of military veterans who have sought treatment from the VA. The VA submitted the declarations of: Kellie N. Robinson, a FOIA officer at the VHA; Deana M. Marakowski, a FOIA Officer at the VHA; and Lijia Guo, Ph.D., Deputy Chief Actuary and Service Director of the Office of the Actuary, Department of Veterans Affairs; and Susan Hickey, Supervisory Program Analyst, National Data Systems ("NDS"), a division of the VHA's Office of Health Information.

9

The VA claims the information sought in Plaintiff's FOIA request is exempted under Exemptions 3 and 6 of the FOIA. 5 U.S.C. § 552(b)(3) & (6). The VA primarily relies on Exemption 6 in denying Plaintiff's FOIA requests. Exemption 6 permits the withholding of information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). A two-part analysis must be made as to Exemption 6: 1) does the file include personnel, medical or similar data; and 2) if so, would disclosure be a clearly unwarranted invasion of personal privacy. *Heights Cmty. Cong. v. VA,* 732 F.2d 526, 528 (6th Cir. 1984). If the information meets the first part of the test, the agency must balance the individual's right to privacy against the public's interest in disclosure to determine whether it meets the second part. *Id.* at 529.

The first part of the two-part analysis has been met in that the requested information is medical in nature. As to balancing the private interest against the public's interest in disclosure, the VA argues that the risk of re-identification is more than theoretical or speculative and that the risk is real. The VA submitted a law review article indicating that there is no guarantee of anonymity even if personal identifiers are not released. The VA analyzed the specific date Plaintiff sought to determine the risk of re-identification. It found that even with "de-identified" data,

a unique patient can be identified, attributes and diagnoses learned and, when combined with public data, the patient can be identified by name. (Doc. No. 20, Ex. 8, ¶ 19) In the FOIA context, this is called the "mosaic" or "compilation" approach and it contemplates that even apparently harmless pieces of information, when assembled together with other data, could reveal otherwise privacy-protected and FOIA-exempt information. The Supreme Court has recognized this "mosaic" approach as a basis for an agency to exempt information from disclosure under the FOIA. *CIA v. Sims*, 471 U.S. 159, 178 (1985)(Bits and pieces of data may aid in piecing together bits of other information which may put the questioned item of information in its proper context.).

Although Plaintiff did not request the names, addresses, or identifying numbers of the veteran-patients in his two FOIA requests, the information sought was for extensive datasets that included patient-level information such as age, gender, race, marital status, means tested income status, homeless status, prisoner of war status, geographic information (including patients, treatment facility and providers' zip code and state), and up to 64 other distinguishing data elements. Dr. Guo and her team confirmed that the data elements even in the de-identified data could be used to re-identify unique patients when linked with other record-level data files that are either publicly available or commercial data files that are available for purchase. (Doc. No.

11

20, Ex. 9, ¶¶ 3 & 7, & Ex. A) Dr. Guo also found that risk of re-identification would remain even if the HIPAA Safe Harbor guidance in combination with additional protections. (Doc. No. 20, Ex. 9, ¶ 20) Dr. Guo demonstrated such re-identification which resulted in re-identifying a veteran with full name, address, date of birth and social security number. (Doc. No. 20, Ex. 9, ¶ 7) The VA claims it has shown that the VHA properly excluded the information because of significant privacy interest in this information.

The VA argues that Plaintiff has shown no public interest in the requested information since the requests were for the use of his private business. Plaintiff may have alleged some public interest because of public benefit in the research and work his company performs with the requested datasets.

Plaintiff responds that the VA overstated its "mosaic" argument and that there is no meaningful risk of re-identification if the VHA properly de-identifies the data. Given the data requested, the cost, difficulty to a lay person in properly understanding the data, and amount of specific knowledge required about a person in order to make an attempt at re-identification, Plaintiff argues that the possibility of a re-identification is remote. Plaintiff also claims that the VA misapplied HIPAA in attempting to de-identify the data. Under HIPAA, the Expert Determination is satisfied when a person with appropriate knowledge determines the risk is very small

12

that the information could be used, alone or in combination with other reasonably available information, by an anticipated recipient to identify an individual who is subject of the information. 45 C.F.R. § 164.514(1). HIPAA regulations also create a "safe harbor" where if certain identifiers are removed, then the data is considered de-identified. 45 C.F.R. § 164.514(2). In his supplemental brief, Plaintiff now argues that HIPAA is not a standard that governs in the FOIA context.

Plaintiff claims that the VA has improperly conflated the two HIPAA processes for de-identification in that the VA applied the HIPAA safe harbor provision and then, on top of that, applied an "expert determination" that the information cannot be safely released. Plaintiff asserts that HIPAA is clear that either method is appropriate, not that both are required. Plaintiff submitted two experts, Dr. Daniel Barth-Jones and Dr. Joseph Gardiner, who both reviewed the conclusions of Dr. Guo and Ms. Hickey. Both conclude that the required datasets, if properly de-identified consistent with the needs of a medical researcher such as Plaintiff, could be safely provided with only a minimal risk of re-identification.

Plaintiff asserts that the Court is not required to give the VA's experts' conclusions deference since he has provided contradicting evidence in his experts' opinions. Plaintiff has previously received data from the VHA and is aware of what variables are at issue and what type of information could be used to re-identify

13

patients. Plaintiff also claims there may be bad faith based on communications from VHA doctors to Plaintiff that suggest the data is being withheld for anti-competitive purposes. Plaintiff argues that any presumption of deference in favor of the VA must "dissipate" and that he is entitled to the data requested, properly de-identified.

Plaintiff claims there exists a public interest. The public interest expands beyond merely whether the VHA is effectively using tax dollars to care for veterans. The VHA has a limited population but its effectiveness or lack of effectiveness should be studied to answer the fundamental questions about whether the government can or cannot provide cost-effective, quality health care. Plaintiff queries if the government cannot provide quality, cost-effective health care to its veterans, can it be trusted to provide health care to a broader population?

Plaintiff also asserts that the VA's position is extremely threatening to academic research in general because it would serve to quash an enormous amount of productive research in the sciences and social sciences, even where a person could show that the risk of re-identification is non-existent or, at most, extremely small.

Reviewing the affidavits submitted by the VA, they all address the re-identification risks. However, the affidavits submitted by Plaintiff's experts also address the re-identification risks. In light of the fact that the VA has now re-reviewed its position and has undergone another analysis regarding re-identification

risks and has now agreed to produce certain data to Plaintiff, the VA's position on re-identification is now in question. Plaintiff has presented sufficient evidence to rebut the VA's position as to re-identification. The VA's Motion for Summary Judgment must be denied.

### 2. Exemption 3

Exemption 3 excludes from disclosure materials that are "specifically exempted from disclosure by statute ..., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The VA argues two statutes protect the veterans' names and home addresses: 38 U.S.C. § 5701 (names and addresses shall be confidential and privileged) and 38 U.S.C. § 7332(a) (confidentiality of the identity and other information of any patient receiving treatment relating to drug abuse, alcoholism or alcohol abuse, HIV or sickle cell anemia).

Plaintiff argues that the VA's main argument under Exemption 3 is re-identification. For the same reasons set forth above, because re-identification is minimal, Plaintiff claims that Exemption 3 is inapplicable.

For the same reasons above, because Plaintiff has submitted evidence to create a genuine issue of material fact that re-identification does not pose a significant risk

15

once the data is properly de-identified, the VA's Motion for Summary Judgment on its Exemption 3 argument must also be denied.

### D. Plaintiff's Cross-Motion for Summary Judgment

In his response, Plaintiff moves for summary judgment in his favor. The E.D. Mich. CM/ECF rules provide that "a response or reply to a motion must not be combined with a counter-motion" and papers filed in violation of this rule "will be stricken." CM/ECF Pol. & Proc. R5(e). The Court, therefore, will not consider Plaintiff's cross-motion for summary judgment contained in its response brief.

Even if the Court were to consider Plaintiff's cross-motion for summary judgment, for the reasons set forth above, there remain genuine issue of material fact as to whether the VA can balance the patient's right to privacy against the public's interest in disclosure of the information. The VA and Plaintiff's experts do not agree that the patient's information cannot be re-identified.

### IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion for Summary Judgment **(Doc. No. 20)** is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Supplemental Brief **(Doc. No. 32)** is DENIED.

IT IS FURTHER ORDERED that a Scheduling Conference is set for **Tuesday, November 4, 2014, 3:00 p.m.**

                    S/Denise Page Hood
                    Denise Page Hood
                    United States District Judge

Dated: September 30, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2014, by electronic and/or ordinary mail.

                    S/LaShawn R. Saulsberry
                    Case Manager